Voto particular disidente emitido por la
Jueza Presidenta Señora Fiol Matta, al cual se unen la Juez Asociada Señora Rodríguez Rodríguez y la Jueza Asociada Oronoz Rodríguez.
La decisión sobre la cual debemos expresarnos hoy responde a una interpretación del poder de reglamentación que la Constitución del Estado Libre Asociado de Puerto Rico ha delegado a este Tribunal que no puedo avalar. Al amparo de un procedimiento inexistente, la mayoría de este Tribunal elabora una definición redundante e innece *912 saria de lo que significa ser parte promovente en un proceso disciplinario contra un miembro de la Judicatura.(1) Dicha definición no solo ya existe en nuestras Reglas de Disciplina Judicial,(2) sino que no contribuye en nada a resolver la controversia que el propio Tribunal ha creado para justificar su actuación. Sin embargo, lo más preocupante de este proceso tan atropellado es que se ha reabierto un proceso disciplinario contra un miembro de la Judicatura, que ya concluyó y se condujo de acuerdo con las normas del Reglamento y del debido proceso de ley.
I
La resolución mayoritaria asevera que su decisión es un ejercicio del poder de reglamentación de este Tribunal. Por eso, como cuestión de umbral, nos preguntamos ¿qué reglamento o enmienda estamos adoptando hoy? ¿Por qué, si se está reglamentando o enmendando un reglamento existente, ordenamos mostrar causa como si se tratara de un caso y controversia adjudicable? ¿Por qué, si estamos ejerciendo legítimamente nuestro poder de reglamentación, concedemos un remedio a una supuesta parte agraviada?(3)
*913 Los hechos que dan lugar a la Resolución están claramente expuestos en la decisión mayoritaria. Por eso, pasamos directamente a evaluar las normas aplicables.
II
La presente controversia se enmarca en la interpretación de las Reglas de Disciplina Judicial, aprobadas por este Tribunal para atender las quejas contra los jueces municipales, jueces superiores y jueces apelativos del País.(4) Los hechos que discute la Resolución corresponden a un caso resuelto en febrero de 2011 bajo las Reglas de Disciplina Judicial de 2005. Nuestro análisis y el del Tribunal deben, por lo tanto, basarse en estas reglas.
El alcance de las Reglas de Disciplina Judicial de 2005 está delimitado en la Regla 3. Acorde con esta, las Reglas de Disciplina Judicial aplicarán cuando se señale a un juez o una jueza del Tribunal de Primera Instancia o del Tribunal de Apelaciones por violar la ley, los Cánones de Ética Judicial, el Código de Ética Profesional o las órdenes y nor-mas administrativas aplicables. También aplicarán ante señalamientos de negligencia crasa, inhabilidad o incompetencia profesional manifiesta en los deberes judiciales, o cuando el juez o la jueza padezca una condición física o mental que no le permita ejercer sus funciones.(5)
Por otro lado, la Regla 4 de Disciplina Judicial define los términos utilizados en este reglamento. El inciso (j) define el término aquí en controversia:
*914 (j) Parte promovente.—Cualquier persona natural que presente una solicitud para que se investigue la conducta o capacidad de un juez o de una jueza.(6)
Mientras, la Regla 5 de Disciplina Judicial, central a la controversia que da base a la resolución mayoritaria, adopta dos mecanismos para iniciar correctamente un proceso disciplinario en contra de un juez o una jueza. Por la pertinencia de esta regla al asunto ante nuestra consideración, la citaremos tal y como fue aprobada en las Reglas de Disciplina Judicial de 2005:
(a) Cualquier persona interesada en que se investigue la conducta de un juez o de una jueza podrá presentar una queja personalmente o por correo ante la Oficina de Asuntos Legales.
(b) La queja cumplirá con los siguientes requisitos:
(1) Se formulará por escrito.
(2) Se formulará bajo juramento.
(3) Indicará el nombre completo, dirección postal y número de teléfono de la persona promovente.
(4) Identificará a la jueza o al juez promovido por su nombre y el tribunal en el que se alega que ocurrieron los hechos, y de desconocer éstos, brindará suficientes datos que permitan su identificación.
(5) Expondrá brevemente los hechos que motivan la queja e indicará la fecha y lugar donde éstos ocurrieron.
(6) Incluirá, además, cualquier otra información e identificará testigos y documentos que sustenten la queja.
(c) El Juez Presidente o la Jueza Presidenta, un Juez Asociado o una Jueza Asociada, el Director o la Directora, podrá solicitar a iniciativa propia y por escrito, una investigación sobre la conducta o capacidad de un juez o una jueza. Dicha solicitud se considerará como una queja, sin que sea necesario cumplir con los requisitos formales del inciso (b) de esta regla. (Énfasis suplido).(7)
*915 Se trata, como vemos, de una regla cuidadosamente detallada en la que ni siquiera se menciona la posibilidad de que se considere correctamente iniciada una queja al recibir un referido o una carta el Juez Presidente o Jueza Presidenta, o alguno de los Jueces Asociados o Juezas Asociadas. De hecho, si se recibe dicha comunicación, la Regla 5(c), supra, deja a la discreción del Juez Presidente o Jueza Presidenta, o de los Jueces y Juezas Asociados que la reciban, la decisión de solicitar el inicio de una investigación. Por lo tanto, si se recibe un referido de esa naturaleza y el Juez o la Jueza de este Tribunal que lo recibe decide no referir el asunto o solicitar el inicio de una investigación, el proceso de queja no comienza y no existe obligación alguna de notificar o justificar dicha decisión a nadie.
HH HH
La decisión mayoritaria intenta enmarcar la presente controversia exclusivamente en torno a la definición del término “parte promovente” utilizado en el proceso disciplinario. Claramente, esa no es la verdadera controversia pues, como vimos, esa definición está expresamente contenida en la Regla 4(j) de Disciplina Judicial, supra. Sin embargo, la mayoría concluye lo siguiente:
De una mera aplicación de la definición del término que proveen las Reglas de Disciplina Judicial es obvio que el peticionario y los Jueces de Apelaciones fueron las personas que solicitaron inicialmente y promovieron la investigación en cuanto a la conducta del juez Candelaria Rosa. El que no lo hayan hecho directamente en la OAT mediante una Queja formal es inmaterial para determinar si estos eran las partes promoventes del procedimiento disciplinario.(8)
Nada más lejos de la verdad. Como ya vimos, incluso bajo las nuevas reglas enmendadas, el mecanismo que se elija para iniciar el proceso disciplinario contra un juez o una *916 jueza es determinante para conocer el procedimiento que seguirá la queja y los derechos de las partes que intervendrán en esta. Solo hay dos mecanismos para iniciar el proceso: (1) que el quejoso acuda a la Oficina de Asuntos Legales de la Oficina de Administración de los Tribunales (OAT) y presente una queja formal(9) y (2) que el Juez Presidente o la Jueza Presidenta, cualquier Juez Asociado o Jueza Asociada, o el Director o Directora de la OAT solicite, a iniciativa propia, el inicio de una investigación.(10) Eso era así cuando comenzó el proceso que la mayoría quiere reabrir y la regla que lo establece no fue enmendada posteriormente.
No hay controversia sobre cómo se inició el procedimiento que hoy está ante nuestra consideración. El 2 de febrero de 2011, el Ledo. Carlos J. López Feliciano, entonces Juez del Tribunal de Apelaciones y los Jueces de Apelaciones, Hon. Juez Sixto Hernández Serrano y Hon. Olga Birriel Cardona, refirieron a la consideración del entonces Juez Presidente Federico Hernández Denton una Resolución en la que se hacían señalamientos éticos en contra del juez superior Carlos I. Candelaria Rosa. Distinto a lo que dice la Opinión mayoritaria, el referido se hizo al Juez Presidente y no al Pleno del Tribunal Supremo. No obstante, el Juez Presidente decidió llevar la situación a la consideración del Pleno, sin estar obligado a ello por ninguna regla o norma. La pregunta que debemos hacernos es: ¿en cuál de los dos procedimientos de la Regla 5 de Disciplina Judicial, supra, se puede ubicar la acción que decidieron tomar los jueces de apelaciones López Feliciano, Hernández Serrano y Birriel Cardona?
Claramente estamos ante la situación descrita en el inciso (c) de la Regla 5. Así, el Juez Presidente tenía sometida a su entera discreción la posibilidad de solicitar el inicio de una investigación o simplemente descartar dicha alternativa, sin tener que dar ninguna explicación ni notificar a *917 nadie. Incluso, cualquiera de los Jueces Asociados o Juezas Asociadas a quienes se les hubiese hecho el referido hubiera podido descartarlo discrecionalmente, sin mayores consecuencias. La opción escogida por los Jueces de Apelaciones que refirieron el asunto no les concedía el derecho a ser notificados del curso de acción escogido por el Juez Presidente; tampoco había obligación de notificarles el resultado de la solicitud de investigación que el Juez Presidente decidió presentar a la Oficina de Administración de los Tribunales, ya que ese resultado es el producto de una decisión exclusivamente discrecional. A igual conclusión tendríamos que llegar si la solicitud la hubiese hecho un Juez o una Jueza de este Tribunal tras un referido similar. La mera lectura de la Regla 5(c) es suficiente para damos cuenta de lo anterior.
Por otro lado, los Jueces del Tribunal de Apelaciones que hicieron el referido tenían a su disposición otro procedimiento que les hubiera garantizado el derecho a la notificación que el licenciado López Feliciano ahora reclama. Si hubieran presentado una queja formal al amparo de la Regla 5(b) de Disciplina Judicial, supra, no habría ninguna duda de que serían partes promoventes y tendrían derecho a ser notificados, incluso de la decisión de no iniciar una investigación, si ese hubiera sido el caso.(11) Claramente, el método escogido para presentar una queja no solo es importante, sino que es trascendental para determinar el procedimiento que se seguirá y los derechos que cobijan a las partes. Decidir otra cosa es obviar el texto claro de nuestras Reglas de Disciplina Judicial.
La nueva definición que la mayoría de este Tribunal da al concepto “parte promovente” nos lleva a la misma conclusión. La Resolución establece que “la parte promovente es aquella que activa e impulsa el procedimiento para que se investigue la conducta de un juez, independientemente del mecanismo que haya utilizado para ello”. *918 (Énfasis suplido).(12) No se deroga ni se enmienda el procedimiento establecido en la Regla 5(c). Por lo tanto, si bajo esta nueva definición de “parte promovente” un juez o una jueza, o cualquier otra persona natural, le refiere por carta, resolución o llamada telefónica anónima una queja en contra de un juez o una jueza al Juez Presidente o Jueza Presidenta, a los Jueces Asociados o Juezas Asociadas, o al Director o Directora de la OAT, ¿sería diferente el resultado? Si se determina que el referido sometido según la Regla 5(c) de Disciplina Judicial no amerita el inicio de un proceso disciplinario, ¿habría que notificar a alguien? La respuesta es que no. Iniciar una investigación disciplinaria bajo el inciso (c) de la Regla 5 deja a la discreción de los funcionarios allí mencionados el solicitar la investigación “por iniciativa propia”.(13) A diferencia del procedimiento iniciado bajo el inciso (b) de la Regla 5, no hay ninguna obligación de notificar a nadie si no se solicita el inicio de una investigación, porque bajo dicha regla la parte promovente, el que inicia el proceso investigativo, es el Juez Presidente o la Jueza Presidenta, los Jueces Asociados y Juezas Asociadas, o el Director o Directora de la OAT. Nadie más.(14)
*919 La anterior conclusión nos da la respuesta al por qué, en la situación ante nuestra atención, la Directora de la OAT notificó únicamente al entonces Juez Presidente Hernández Denton de su decisión de archivar la queja que éste le refirió. Una vez recibió la Resolución de los Jueces del Tribunal de Apelaciones, el Juez Presidente decidió solicitar, a iniciativa propia, el inicio de una investigación disciplinaria a la Oficina de Asuntos Legales de la OAT. El proceso claramente se inició bajo la Regla 5(c) de Disciplina Judicial, supra.
Luego de la investigación,(15) la Oficina de Asuntos Le-gales sometió un informe a la Directora de la OAT en el cual recomendó archivar la queja. La Directora acogió dicha recomendación y notificó su decisión a las únicas personas a las que estaba obligada a hacerlo: al juez superior Candelaria Rosa y al Juez Presidente, este último como promovente de la investigación. No hay razón ni fundamento jurídico para configurar ahora una controversia inexistente en torno a la definición de “parte promovente” y no reconocer que el cuestionamiento del licenciado López Feliciano descansa en su inconformidad con el mecanismo que él mismo eligió para presentar su queja.
IV
Como Jueza Presidenta, defiendo el principio cardinal de transparencia en los procedimientos disciplinarios por conducta antiética de los miembros de la Rama Judicial. Incluso, reconozco la bondad de revisar periódicamente las disposiciones de nuestros reglamentos y doy la bienvenida a los procesos de ponderación y discusión que esto requiere. No me opongo a que, utilizando los mecanismos adecuados, hagamos las enmiendas reglamentarias necesarias para re *920 forzar los mecanismos con que cuenta el Tribunal para garantizar la verticalidad de los miembros de la Judicatura. Lo que no es aceptable es que, so pretexto de traer transparencia a los procedimientos, violemos principios judiciales de gran importancia para nuestro balance constitucional, entre ellos los principios de justiciabilidad. Esta decisión crea un precedente peligroso. Con la excusa de ejercer nuestro poder de reglamentación, hemos iniciado motu proprio un procedimiento cuasiadversativo al expedir una orden para mostrar causa sin partes ni controversia. En efecto, autoriza al Pleno de este Tribunal a intervenir, por iniciativa propia, en un proceso disciplinario administrativo aunque haya concluido luego de los trámites reglamentarios correspondientes.(16)
El profesor Carlos E. Ramos González ha expresado, sobre el poder de reglamentación de este Tribunal, que “[e]l poder de auto-reglamentación solo será legítimo y eficiente si el Tribunal actúa con prudencia, transparencia, inteligencia y actuando en consenso”.(17) Y no es para menos, pues las decisiones que tome este Tribunal Supremo en torno a las reglas que regirán el proceso disciplinario é investigativo contra los miembros del Tribunal General de Justicia deben tomarse con el mayor de los cuidados y con plena conciencia de que nos jugamos nuestra legitimad como últimos intérpretes del Derecho puertorriqueño.

 Recientemente este Tribunal definió el concepto “parte promovente” en el contexto de un procedimiento disciplinario contra profesionales del derecho. Aunque hice constar mi inconformidad con que se emitiera una opinión en lugar de una Resolución —que era lo que correspondía porque los procedimientos se encontraban en la etapa inicial de queja—, estuve conforme con definir el concepto porque el Reglamento de este Tribunal carecía de la definición. Sin embargo, en este caso, que trata de un procedimiento en contra de un juez y que se rige por las Reglas de Disciplina Judicial, eso es innecesario pues, como veremos, el concepto ya está definido.

 4 LPRAAp. XV-B.

 En mi voto particular disidente en In re Aprob. Rs. y Com. Esp. Ind., 184 DPR 575, 644 (2012), advertí sobre el peligroso proceder de este Tribunal al hacer un uso impropio del poder de reglamentación. Haciendo referencia al caso Negrón Soto v. Gobernador, 110 DPR 664 (1981), expresé: “En primer lugar [en aquel caso] separamos con meridiana claridad la función administrativa del quehacer adjudicativo judicial, distinción que la mayoría no reconoce en esta ocasión, pues simultáneamente adopta un reglamento administrativo y adjudica una controversia que aún no se le ha presentado al amparo de las reglas recién adoptadas”. (Énfasis suprimido).

 Recientemente enmendamos estas reglas mediante una Resolución para a fomentar mayor transparencia en los procedimientos disciplinarios y asegurar que el reglamento “sirva como mecanismo profiláctico de cualquier conducta antiética que pueda socavar la integridad del sistema judicial, sin menoscabar el derecho al debido proceso de ley de los jueces y las juezas”. (Énfasis suplido). In re Enmdas. Rs. Disciplina Judicial, 191 DPR 563 (2014). Al adoptar estas enmiendas, expresamos que la conducta contraria a la ley y al ordenamiento ético no tendría cabida entre los funcionarios de la Rama Judicial.

 4 LPRAAp. XV-B, R. 3.

 4 LPRAAp. XV-B, R. 4(j). Cabe destacar que esta definición, que ya existía en el 2005, no cambió con las enmiendas introducidas recientemente.

 4 LPRA Ap. XV-B, R. 5. Las enmiendas del 2014 añaden a la Regla 5 una oración al final del inciso (a) para establecer que también se podrán presentar querellas en el lugar dispuesto para ello en cada región judicial. Añade también la expresión “deberá contener” en la primera oración del inciso (b) y una oración al final del mismo inciso que establece que el incumplimiento con alguno de los requisitos dispuestos no acarreará necesariamente el archivo de la queja.

 Opinión mayoritaria, págs. 892-893.

 4 LPRA Ap. XV-B, R. 5(b). Según las nuevas enmiendas, también se podrá presentar la queja en los lugares dispuestos en cada Región Judicial.

 4 LPRAAp. XV-B, R. 5(c).

 Véase Regla 6(b) y (d), 4 LPRAAp. XV-B.

 Opinión mayoritaria, págs. 891-892. La Opinión mayoritaria también ex-presa que los Jueces del Tribunal de Apelaciones promovieron “activamente” la investigación. Los hechos no controvertidos establecen que estos refirieron la Resolución a la atención del Juez Presidente el 2 de febrero de 2011. Luego de esto, no es hasta el 11 de septiembre de 2014, es decir, 3 años y 7 meses después, que uno de ellos envía una misiva a la Jueza Presidenta solicitando información sobre el resultado de su referido. Durante todo este tiempo los Jueces del Tribunal de Apelaciones no mostraron ningún interés en su referido. Ciertamente, esto dista mucho de lo que sería promover activamente un proceso investigativo.

ls) Evidentemente, la discreción que tienen estos funcionarios se ve limitada por las obligaciones éticas, morales y legales que les aplican y requieren que actúen ante la posible comisión de un delito y la violación de alguna norma de conducta ética, entre otros.

 Incluso, las propias Reglas de Disciplina Judicial instruyen al Director o Directora de la OAT a notificar al Juez Presidente o Jueza Presidenta, con exclusión de cualquier otra persona que no sea el juez querellado o jueza querellada, del trámite seguido por una solicitud de investigación al amparo de la Regla 5(c). Véase Regla 6(f), (g) y (h), 4 LPRAAp. XV-B.

 La Opinión mayoritaria enfatiza en que la OAT tardó 2 años y 8 meses en concluir la investigación de la queja. Ciertamente este período de tiempo es inaceptable.

 Las Reglas de Disciplina Judicial establecen el trámite para que un caso y controversia llegue legítimamente ante nuestra consideración. Véase Regla 9 de Disciplina Judicial, 4 LPRAAp. XV-B.

 C.E. Ramos González, La crisis constitucional y el ejercicio del poder de reglamentación por el Tribunal Supremo de Puerto Rico, 46 Rev. Jur. UIPR 249 (2012).